MONTGOMERY & COMPANY *v.* MARTIN.

1. Where a mortgagee of personalty, without the consent of a surety upon the note secured by the mortgage, applies the mortgaged property or its proceeds to another debt owing to him by the mortgagor, the surety is discharged to the extent of the value of the property or its proceeds thus misapplied, but no further.
2. A promise by the mortgagee, made after the contract of suretyship, not to credit the mortgagor beyond the amount covered by the mortgage, will not bind the mortgagee, the same being made without any consideration; and a breach of such a promise will have no effect on the contract of suretyship.

July 30, 1894.

Complaint on notes. Before Judge ATTAWAY. City court of Cartersville. December, 1893.

Two promissory notes were sued on, dated January 14, 1890, one for $175 due October 1, 1890, the other for $139.75 due November 1, 1890. They were signed by W. G. Bailey and F. M. Martin. They bore credits of cash paid, $18.06 and $126.16, October 25 and November 18, 1890, respectively; and of $18.20 net proceeds of sale of property of Bailey under mortgage *fi. fa.*, coming into the sheriff's hands January 6, 1891. Martin pleaded not indebted, and that he was only surety upon the notes, and they were taken with that distinct understanding. Further, he signed them on agreement with plaintiffs, that they would take from Bailey a valid mortgage to secure them, upon live stock of Bailey worth $150, and upon Bailey's crops of 1890, consisting of about fifty-five acres of cotton and eight acres of corn, all situated upon the place of defendant; and upon the further agreement with plaintiffs that they should not furnish Bailey more supplies or other things than would make the principal of the notes, and that they would diligently use the mortgage (which was in fact given by Bailey to plaintiffs) in such way as that defendant should get the benefit thereof in the extinguishment of the notes sued on: that is to say that plaintiffs, upon the maturity of the notes, would diligently foreclose the same and collect all possible thereon. These agreements were a condition precedent on which defendant signed the notes, but plaintiffs violated the agreement, in that they did not diligently foreclose and collect the mortgage and endeavor to collect said debts, Bailey's crop so mortgaged being worth some $415, and plaintiffs' mortgage being a first lien thereon; and if plaintiffs had complied with their agreements, they would have realized from the foreclosure of the mortgage more than enough to discharge the notes. Plaintiffs further violated the agreement, in that they failed and refused to confine the things furnished by them to Bailey to the

amount of the notes sued on, but furnished him in addition supplies to the amount of $100, whereby his indebtedness to them became increased and his ability to pay the notes decreased, and the risk of this defendant increased, contrary to the express agreement, as a condition precedent to the signing of the notes, that all payments received by plaintiffs from Bailey, and especially all his crops, should be credited on the notes. Defendant cannot give the exact dates and amounts so paid by Bailey to plaintiff, but some time between September 1 and December 1, 1890, Bailey delivered to them seven bales of cotton, worth on an average $45 per bale, or more, which should have been applied to the notes sued on.

There was a verdict for defendant, and plaintiffs' motion for new trial was overruled. The motion contains the grounds that the verdict was contrary to law and evidence; and the following:

Error in allowing Martin to testify that it was the agreement and understanding between him and Montgomery, before and after the signing of the notes, that the proceeds of Bailey's cotton should be applied to the payment of the notes, and that the notes were given on that condition; plaintiffs objecting that this sought to engraft new conditions upon the contract, in conflict with that expressed in the notes.

Error in charging: "If you believe from the testimony that Martin signed these notes only as security, and that he signed them upon the condition that was agreed to by Montgomery at the time, that Montgomery would apply the proceeds of all cotton brought in by Bailey that year to the extinguishment of these notes; now if you believe that Martin signed these as security upon the condition which was agreed to then at the time, and you further find from the testimony that Montgomery failed to carry out that condition and comply

with that contract and agreement, then Martin would be released under the law.

"If Martin signed the notes as security upon the further condition, which was agreed to at the time by Montgomery, that Montgomery was to take a mortgage from Bailey on part of his crop for the purpose of securing Martin, and Montgomery did afterwards, in pursuance of this agreement, take a mortgage and then afterwards misapplied the proceeds of said cotton, that would release Martin.

"If you find from the·evidence that the condition on which Martin signed the notes sued on, as security for Bailey, was that Montgomery should take from Bailey a mortgage on the latter's cotton crop ·to secure said debt, and apply the proceeds received by Montgomery from said cotton crop upon the notes which Martin signed as security, and Montgomery assented to this agreement, and violated this agreement by securing the proceeds of said cotton and appropriating it to another debt, then I charge you that Martin would be released and discharged, and the plaintiffs could not recover.

"If you find from the evidence that the condition on which Martin signed the notes sued on, as security, was that Montgomery should not extend credit to Bailey over and above the amount of the notes which Martin signed as security, in such a way as to increase Martin's risk; that is, that Montgomery should not sell anything to Bailey on a credit after he had taken up the amount which Martin signed as security, and in this way increase Martin's risk; and if this condition was understood and agreed upon by Martin and Montgomery at the time of signing said notes, and if Montgomery violated this agreement or condition, by letting Bailey have goods in addition to the amount of the notes sued on, without Martin's consent, and applied the payment of such overplus to the proceeds of cotton

mortgaged to secure the notes sued on, then I charge you that Martin would be released and discharged and plaintiffs could not recover anything against him in this case."

A. M. FOUTE and T. C. MILNER, for plaintiffs.

JOHN W. AKIN, for defendant.

LUMPKIN, Justice.

The motion for a new trial contains several grounds, which, together with the facts necessary to an understanding of the questions involved in this case, are set forth by the reporter. The head-notes really cover the whole case upon its substantial merits, as disclosed by the record.

1. It appears that Montgomery & Company did, in fact, take from Bailey a mortgage in accordance with their agreement to do so; but as against the rights of Martin, the surety, they wrongfully applied a portion of the mortgaged property, or its proceeds, to another debt they held against Bailey. To this extent the surety was injured, and therefore is entitled to credit, as to his liability on the note, to the extent of the value of the property thus misappropriated.

2. It does not appear that Montgomery & Company made any agreement with Martin not to credit Bailey beyond the amount covered by the mortgage, as an inducement to sign the note. If, after the execution and delivery of the note, Montgomery & Company, without any valuable consideration moving to them, made any such agreement, it would not affect the contract of suretyship entered into by Martin, because such agreement on the part of Montgomery & Company would be a mere *nudum pactum;* but neither the absence of such an agreement nor its invalidity would authorize the appropriation of the mortgaged property to the additional debt of Bailey not covered by the mortgage, even if the

surety expressly assented to the giving of the additional credit to Bailey, unless that assent, fairly interpreted under all the circumstances, clearly implied a consent on the part of the surety to such application. As the case is to be tried again, we trust that the facts, which, with the record now before us, appear to be somewhat confused, will be fully cleared up, and that, in the light of the rules we have attempted to outline, a right and just result may be reached.            *Judgment reversed.*