### 66489. MITCHELL v. RINGSON et al.

CARLEY, Judge.

On October 6, 1976, appellant Boris Mitchell executed a "General Agreement" with WBIA Radio, Inc. (WBIA Radio), appellee Norma Ringson, W. Ray Ringson, and others. Pursuant to the agreement, WBIA Radio executed, on the same date, two promissory notes, each of which was payable to appellee Norma Ringson and to W. Ray Ringson. Both promissory notes were signed by appellant and three other individuals as guarantors. W. Ray Ringson subsequently died, and appellees Norma Ringson and Georgia Railroad Bank & Trust Company were appointed executors of his estate.

WBIA Radio defaulted on both of the promissory notes. Seeking to recover the amounts due on the notes, appellees brought suit in state court against WBIA Radio as the principal debtor, and against appellant Boris Mitchell and two others as guarantors. Suit was also brought against a fourth guarantor in federal court. WBIA Radio, the principal debtor, subsequently initiated bankruptcy proceedings, and the trial in state court was continued as to two of the guarantors. However, with appellant's consent, the trial court ordered the severance of the case for trial as to him. At the resulting trial, appellees successfully moved for a directed verdict at the close of the case. Appellant appeals.

1. Appellant enumerates as error the granting of appellees' motion for a directed verdict, contending that because of his status as a "guarantor" of the promissory notes, the suit by appellees was not properly maintained against him. Appellant asserts that appellees must first obtain a judgment against the principal debtor, WBIA Radio, and that that judgment must remain unsatisfied before appellant, as a guarantor, can be held liable for the amounts due on the notes.

OCGA § 11-3-416 (3) (Code Ann. § 109A-3—416) provides: "Words of guaranty which do not otherwise specify guarantee payment." In the instant case, on the face of each of the two promissory notes, directly underneath appellant's signature, is the word "GUARANTOR." "Accordingly, where, as in the present case, a promissory note sued upon is signed by one of the parties with the word 'guarantor' following such signature, such party must pay the

note according to its tenor *without resort by the holder to any other party as a condition precedent thereto . . .*" (Emphasis supplied.) *Sadler v. Kay,* 120 Ga. App. 758, 759 (172 SE2d 202) (1969).

The fact that appellant was to *guarantee payment* of the note is further substantiated by the following language immediately preceding appellant's signature on the face of both of the notes: "In consideration of Five and no/100 ($5.00) Dollars and other valuable consideration, the undersigned hereby jointly and severally guarantee payment of the within foregoing note." OCGA § 11-3-416 (1) (Code Ann. § 109A-3—416) provides " 'payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party." Thus, in the present case, appellant guaranteed payment of the note, and, under the terms of OCGA § 11-3-416 (Code Ann. § 109A-3—416), "consented to being sued without the holder's joining the maker and without the holder's first suing the maker." *Broun v. Bank of Early,* 243 Ga. 319, 321 (253 SE2d 755) (1979).

Appellant contends, however, that when the notes were executed in 1976, former Code Ann. § 103-101 was in effect. Appellant asserts that under that former statute he would be considered a guarantor as opposed to a surety of the notes, and that the instant suit against him was premature. Whatever the merits of appellant's argument under the former statute, we note that the Uniform Commercial Code became effective January 1, 1964, and thus was in effect in October 1976, when the instant promissory notes were executed. If there is any conflict between the provisions of the Uniform Commercial Code and former Code Ann. § 103-101, the Uniform Commercial Code, as the later expression of the legislature, would control over the former Code Ann. § 103-101. See *Atlanta Finance Co. v. Brown,* 187 Ga. 729, 731 (2 SE2d 415) (1939).

"Whatever may have been the difference, if any, between 'guaranty' and 'surety' seems to have been fused, however, at least for purposes of the Uniform Commercial Code by the adoption of the Code which provides that 'surety' includes 'guarantor.' [OCGA § 11-1-201 (40) (Code Ann. § 109A-1—201)]." *Kennedy v. Thruway Svc. City,* 133 Ga. App. 858, 862 (3) (212 SE2d 492) (1975). The relevant statute for determining appellant's status concerning the promissory notes is thus OCGA § 11-3-416 (Code Ann. § 109A-3—416), and the trial court did not err in granting appellees' motion for a directed verdict for reasons asserted in the first enumeration.

2. Appellant next asserts that it was error for the trial court to grant appellees' motion for directed verdict because any obliga-

tions owed by appellant under the contract of guaranty had been discharged.

Appellant first contends that any obligations were discharged because appellees failed to maintain a perfected security interest in the collateral named in the promissory notes. Appellant specifically contends that although appellees did file a financing statement covering the collateral, appellees allowed the financing statement to lapse. See OCGA §§ 11-9-302 (Code Ann. § 109A-9—302), 11-9-403 (Code Ann. § 109A-9—403). "The present law governing the discharge of parties from liability on instruments may be found in [OCGA § 11-3-601 (Code Ann. § 109A-3—601)]." *Westwood Place, Ltd. v. Green,* 153 Ga. App. 595, 596 (266 SE2d 242) (1980), modified on other grounds, 246 Ga. 287 (271 SE2d 194) (1980). (See OCGA § 11-3-601 (1)(d) (Code Ann. § 109A-3—601).) OCGA § 11-3-606 (1)(b) (Code Ann. § 109A-3—606) in turn provides that "[t]he holder discharges any party to the instrument to the extent that without such party's consent the holder: . . . [u]njustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

It was the burden of appellant as the guarantor to show an impairment of the collateral for the instruments. See *Hurt v. Citizens Trust Co.,* 128 Ga. App. 224 (2) (196 SE2d 349) (1973); *Arnold v. Darby,* 49 Ga. App. 629 (176 SE 914) (1934); *Hunter v. Community Loan &c. Corp.,* 127 Ga. App. 142 (193 SE2d 55) (1972) (Pannell, Judge, concurring specially). Appellant produced absolutely no evidence that appellees' failure to maintain a perfected security interest in the collateral "[u]njustifiably impair[ed] [the] collateral for the instrument." OCGA § 11-3-606 (1)(b) (Code Ann. § 109A-3—606). Appellant, for example, does not contend that the collateral was lost or subordinated to the claims of others. See generally OCGA §§ 11-9-301 (Code Ann. § 109A-9—301), 11-9-312 (Code Ann. § 109A-9—312). Furthermore, the two notes, the "Security Agreement" and the "General Agreement" imposed no duty on appellees to file a financing statement but, in fact, left the decision whether to do so at the option of the appellees. Appellant's assertion that his obligations were discharged by the failure of appellees to maintain a perfected security interest in the collateral, therefore, is not supported by the evidence. See generally *Hurt v. Citizens Trust Co.,* supra; *Hunter v. Community Loan &c. Corp.,* supra.

Appellant further asserts that he is discharged from any obligation on the notes because appellees approved a transfer of all of the collateral for the notes to certain parties who purchased the stock of WBIA Radio. However, the evidence demonstrates that appellees

at no time *released* the collateral to the other parties, and the transfer was subject to the terms of the promissory notes. Furthermore, in exchange for the transfer of the WBIA Radio stock, the parties who purchased the WBIA Radio stock *also* became guarantors on the notes. Appellant does not indicate how this transfer impaired the collateral or harmed him in any manner. Appellant's assertion that this transfer should act to discharge him is without merit. See generally *W. T. Rawleigh Co. v. Overstreet,* 71 Ga. App. 873, 882 (32 SE2d 574) (1944); *Hunter v. Community Loan &c. Corp.,* supra. Compare *Kennedy v. Farmers & Merchants Bank,* 47 Ga. App. 104 (169 SE 769) (1933), where the holder *released* the collateral to the principal.

Appellant finally claims that he is discharged because appellees accepted untimely payments on the notes by WBIA Radio. OCGA § 11-3-606 (1) (a) (Code Ann. § 109A-3—606); *Kellett v. Stanley,* 153 Ga. App. 854 (267 SE2d 282) (1980).

"While a novation without the consent of the surety releases him, there is no novation where there is no new consideration. [Cits.] A debtor's promise to pay a debt already due creates no additional obligation; therefore, the creditor's agreement to allow a delay in payment is not an additional consideration. [Cit.]" *Sens v. Decatur Fed. Savings &c. Assn.,* 159 Ga. App. 767 (285 SE2d 226) (1981). There is no evidence of additional consideration being given in the instant case and, accordingly, no novation or increased risk to the appellant resulted from which appellant may claim he was discharged.

3. Finding no error, we hold that the trial court properly granted appellees' motion for a directed verdict.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED NOVEMBER 29, 1983.

*J. Carlisle Overstreet,* for appellant.

*Ben Swain McElmurray, Jr., Gould B. Hagler, Michael B. Hagler,* for appellees.